UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
ROWE PLASTIC SURGERY OF LONG ISLAND, P.C.                              :
and NORMAN MAURICE ROWE,                                               :
M.D., M.H.A., L.L.C,                                                   :
                                                                       :
                        Plaintiffs,                                    :
                                                                       :     22 Civ. 9328 (JPC)
            -v-                                                        :
                                                                       :     ORDER ADOPTING
AETNA LIFE INSURANCE COMPANY,                                          :     REPORT AND
                                                                       :     RECOMMENDATION
                        Defendant.                                     :
                                                                       :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

The instant case brought by Plaintiffs Rowe Plastic Surgery of Long Island, P.C. and Norman Maurice Rowe, M.D., M.H.A., L.L.C. is one of a horde filed against Defendant Aetna Life Insurance Company ("Aetna") in this District and the Eastern District of New York. Plaintiffs claim that Aetna underpaid them for a surgery they performed by failing to honor a statement of coverage and benefit rates made during a benefits verification call, a claim which the Second Circuit and this Court's peers have uniformly rejected. And despite Plaintiffs' belated attempt to buck that trend by adding allegations to their Complaint, they still fail to state any claims. So the Court adopts the Honorable Ona T. Wang's Report and Recommendation recommending dismissal of this case with prejudice and her Order denying reconsideration of that recommendation.

**I. Background**[1]

In September 2022, Plaintiffs sued Aetna in the Supreme Court of New York, Bronx

---

[1] The facts contained in this section, which are assumed true solely for purposes of this Opinion and Order, are taken from Plaintiffs' Complaint. *Cf. Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

County, for issuing payments that were allegedly "not what was offered to induce [Plaintiffs'] performance" of a "procedure called reduction mammaplasty bilateral," which they performed on HC, one of their patients. Dkt. 1, Exh. 1 ("Compl.") ¶¶ 2-3. Plaintiffs allege that during a June 23, 2022 phone call, "Aetna's employee represented that the total allowed amount for this service was based upon 80% usual and customary for covered services rendered to HC," with "80% Usual and Customary" being "an industry term which means Aetna would pay an amount equal to 80% of the Usual and Customary percentile threshold for that service in the [geographic] area where the services were rendered." *Id.* ¶¶ 27-28; *see also id.* ¶ 4. Plaintiffs claim that they "accepted Aetna's offer by rendering bilateral reduction mammaplasty to HC" on August 18, and while they "billed Aetna a total of $150,000.00 for the services Dr. Rowe rendered to HC" on that date based on the 80% Usual and Customary industry term, Aetna paid out only "$1,316.10" for Dr. Rowe's services. *Id.* ¶¶ 29-35. In light of that alleged underpayment, Plaintiffs assert four causes of action against Aetna: breach of contract, *id.* ¶¶ 62-71, unjust enrichment, *id.* ¶¶ 72-81, promissory estoppel, *id.* ¶¶ 82-86, and a violation of New York's Prompt Pay Law, N.Y. Ins. Law § 3224-a, Compl. ¶¶ 87-91.

Aetna removed the case to this District on October 31, 2022, Dkt. 1, and filed an Answer to the Complaint on December 7, 2022, Dkt. 9. On August 17, 2023, the Court referred the case—as did several of this Court's peers for other cases involving Plaintiffs—for general pretrial management to Judge Wang. Dkt. 28. Judge Wang held a status conference for those cases on December 20, 2023, to address the impact of the Honorable Jed S. Rakoff's decision dismissing a nearly identical action brought by Dr. Rowe against Aetna for failure to state a claim, *see Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* ("*Rowe I*"), 705 F. Supp. 3d 194 (S.D.N.Y. 2023). Dkts. 29, 31. On December 22, 2023, this case and several others were stayed while Plaintiffs appealed Judge Rakoff's decision to the Second Circuit. Dkts. 31, 36. Before that appeal

was decided, the Honorable Denise L. Cote issued an opinion dismissing yet another strikingly similar complaint brought by Dr. Rowe against Aetna for "largely" the same reasons as Judge Rakoff and denied leave to amend for futility because the "plaintiffs have not explained how the proposed amendment would cure any of the deficiencies" in the operative complaint. *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* ("*Rowe II*"), No. 23 Civ. 8529 (DLC), 2024 WL 382143, at *1-2 (S.D.N.Y. Feb. 1, 2024).

On September 27, 2024, the Second Circuit affirmed Judge Rakoff's decision. *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* ("*Rowe III*"), No. 23-8083, 2024 WL 4315128 (2d Cir. Sept. 27, 2024) (summary order). As the panel explained, the plaintiffs' breach-of-contract claim failed because their allegations fell "short of the definiteness typically required to create an offer, such as details of the specific service and the price or an explicit undertaking of a duty," and "[a]bsent an offer, there can be no contract." *Id.* at *2-3. Their promissory-estoppel claim similarly failed because their allegations did "not plead a clear and unambiguous promise that is actionable under existing law." *Id.* at *4. Their unjust-enrichment claim, held the Second Circuit, fell short because Aetna did not directly benefit from the plaintiffs' services, nor had the plaintiffs alleged "that Aetna requested their services." *Id.* at *3-4. And finally, the plaintiffs failed to state a claim for fraudulent inducement because they had "simply restated their breach of contract claim," and "a fraud claim will not be sustained on a motion to dismiss where the plaintiff is simply using the claim 'as a means of restating what is, in substance, a claim for breach of contract.'" *Id.* at *5 (quoting *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006)).[2]

On October 11, 2024, the parties in this case filed a status letter apprising the Court of the Second Circuit's affirmance in *Rowe III*. Dkt. 33 ("Status Letter"). Plaintiffs insisted that as a

---

[2] The plaintiffs in *Rowe III* did not plead a violation of New York's Prompt Pay Law, unlike here.

3

summary order, the panel's decision lacked "precedential effect." *Id.* at 1. Plus, Plaintiffs sought "leave to conduct targeted discovery to aid in drafting an Amended Complaint in this action" because there were "multiple conversations that occurred between themselves and Aetna prior to the surgery at issue being performed," while the Second Circuit's decision was "based on a transcript of a single telephone call." *Id.* at 2. Aetna, for its part, argued that "Plaintiffs' Complaints should be dismissed with prejudice" as "the underlying basis upon which Plaintiffs' cases rest is indistinguishable from the issue at the heart of the Second Circuit's decision." *Id.* at 3. Aetna also sought to stay discovery "while the parties engage in expedited motion practice to determine whether, consistent with the Second Circuit's recent decision, the verification of benefits calls at issue were offers of payment to Plaintiffs." *Id.* at 4.

Judge Wang denied Plaintiffs' request for leave to conduct discovery on October 22, 2024. Dkt. 36. And on December 9, 2024, she granted Aetna's request for expedited motion practice in part, Dkt. 37 at 3, ordering Plaintiffs to show cause "by January 10, 2025, why (1) the above-captioned cases differ from and should not be dismissed considering the Second Circuit's decision in [*Rowe III*]; and (2) why the parties and/or counsel are not barred from seeking amendment in light of Judge Cote's decision in [*Rowe II*]," Dkt. 38 at 2.

January 10 came and went without any response from Plaintiffs. So on January 13, 2025, Judge Wang recommended that this case "be dismissed with prejudice." Dkt. 39 ("R&R") at 2. Judge Wang's Report and Recommendation, citing both Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1), advised the parties that they had fourteen days from service of the Report and Recommendation to file any objections, and warned that failure to timely file such objections would result in waiver of any right to object and would preclude appellate review. *Id.*

Later that same day, Plaintiffs belatedly filed their response to Judge Wang's December 9

Order to Show Cause, Dkts. 40, 41 ("OTSC Br.")—along with an extension request asking Judge Wang to excuse their late response because of a filing error, Dkt. 43—and a motion for leave to amend the Complaint, Dkt. 42. The proposed Amended Complaint alleges that a "course of communication between the parties establishes that Aetna clearly and definitely undertook to pay a specific price for a specific surgery," although the only alleged communication that specifically concerned price remains the phone call on June 23, 2022,[3] during which "Aetna orally represented" that it would be using "the '80th percentile of Reasonable and Customary' fee schedule." PAC ¶¶ 76-77, 83; *see also id.* ¶¶ 78-82 (detailing Aetna's oral representation "that the surgery would be covered" and discussions between Plaintiffs and Aetna about the assistant surgeon and the surgery's location). The proposed Amended Complaint asserts five causes of action: breach of contract, *id.* ¶¶ 24-46, unjust enrichment, *id.* ¶¶ 47-67, promissory estoppel, *id.* ¶¶ 68-87, fraudulent inducement, *id.* ¶¶ 88-100, and conversion, *id.* ¶¶ 101-107. (Compared to the original Complaint, the proposed Amended Complaint seeks to add the fraudulent-inducement and conversion claims and to drop the New York Prompt Pay Law claim. *Compare id.* ¶¶ 88-107, *with* Compl. ¶¶ 87-91.) Aetna opposed Plaintiffs' extension request because Judge Wang's Order to Show Cause "did not give Plaintiffs permission to file a motion to amend and Plaintiffs did not seek permission by way of a premotion conference letter," explaining that under the Report and Recommendation, the case should "be dismissed with prejudice unless timely objections are filed." Dkt. 44 at 1-2.

Judge Wang construed Plaintiffs' late filings as a motion to reconsider her January 13 Report and Recommendation and issued an Order denying reconsideration on January 14, 2025.

---

[3] The original Complaint uses dates in 2022, while the proposed Amended Complaint uses the same dates, but in 2020. *Compare* Compl. ¶¶ 25-29 (alleging that the phone call took place on June 23, 2022), *with* Dkt. 40, Exh. 2 ("PAC") ¶¶ 76-82 (alleging that the phone call took place on June 23, 2020).

Dkt. 46 ("Reconsideration Order") at 2-5. As she explained, "Plaintiffs have not put forth new facts or law that justify reconsideration" of the Report and Recommendation. *Id.* at 3. While "Plaintiffs' main argument with respect to amendment indeed relies on adding more communications between the parties to the complaint," they "already made this argument in their October 11, 2024, status letter," and "the communications that Plaintiffs seek to add by amendment do not relate to the supposed rate of payment for the services performed and thus do not support the existence of a 'course of communication' regarding the same." *Id.* at 4. Put simply, "the proposed amended complaint still alleges only a single isolated instance where the parties allegedly discussed the rate of payment." *Id.* at 5 & n.4 (citing PAC ¶¶ 76-82). "Because Plaintiffs have failed to present any new facts or controlling law that the Court did not previously consider," Judge Wang concluded, their "motion for reconsideration is denied." *Id.* at 5. Judge Wang made clear that "Plaintiffs may include any objections to th[e Reconsideration] Order, if any, with their objections, if any, to the Court's January 13" Report and Recommendation, and that their failure to object within fourteen days would "result in a waiver of objections" and "preclude appellate review." *Id.* at 5-6.

On January 22, 2025, Plaintiffs moved this Court for an extension of time "to submit objections to Magistrate Judge Wang's Report and Recommendation ('R+R') issued of January 14, 2025, which reconsidered her R+R of January 13, 2025." Dkt. 47. Plaintiffs observed that their objections to Judge Wang's "January 14, 2025" Reconsideration Order were "due January 28, 2025" and sought "to extend that time to January 31, 2025." *Id.* This Court granted that request on January 23, 2025, ordering that "Plaintiffs' objections to Judge Wang's Report and Recommendation shall be due on or before January 31, 2025." Dkt. 48.

On January 31, 2025, Plaintiffs submitted objections to Judge Wang's "Report and Recommendation ('R&R') issued on January 13, 2025, and the Order on Reconsideration issued

6

on January 14, 2025, which upon reconsideration adhered to the findings of the R&R." Dkt. 49 ("Objections") at 1. Aetna filed its response to those objections on February 14, 2025. Dkt. 50 ("Response").

Finally, on April 4, 2025, Judge Wang addressed Plaintiffs' pending motion to amend, Dkt. 42, explaining that her January 14 Reconsideration Order "only addressed whether the motion to amend raised any facts or law that warranted reconsideration of the [January 13 Report and Recommendation] and did not conduct the traditional analysis under Rule 15 and 16; nor did [she] rule on whether Plaintiffs should be given leave to amend the complaint," Dkt. 53 at 2. Observing that this case was "nearly identical" to another before the Honorable Jennifer L. Rochon in which Judge Wang issued an Opinion and Order "denying Plaintiffs' motion to amend," Judge Wang denied the motion to amend in the instant case "for the same reasons described in 22-cv-7900, ECF 76." *Id.* at 2-3. That prior Opinion and Order, in turn, denied a motion to amend because the plaintiffs "did not exercise diligence in seeking amendment," and "allowing amendment would prejudice" Aetna. *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.*, No. 22 Civ. 7900 (JLR) (OTW), Dkt. 76 at 5-7 (S.D.N.Y. Apr. 3, 2025). No party in this case has objected to the denial of the motion to amend.

## II. Standard of Review

### A.   Review of a Magistrate Judge's Report and Recommendation

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a report and recommendation. 28 U.S.C. § 636(b)(1)(C). If a party submits a timely and proper objection to any part of the magistrate judge's disposition, the district court will conduct a *de novo* review of the contested section. *See* Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). "To be proper, an objection must be clearly aimed at particular findings, and may not be conclusory

7

or general." *Riaz v. Comm'r of Soc. Sec.*, No. 20 Civ. 8418 (JPC) (SLC), 2022 WL 4482297, at *2 (S.D.N.Y. Sept. 27, 2022) (internal quotation marks and citations omitted). And "[p]arties may neither regurgitate the original briefs to the magistrate judge nor raise new arguments not raised to the magistrate judge in the first instance." *Id.* (internal quotation marks omitted); *accord United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019). A district court accordingly reviews those parts of a report and recommendation to which no party has filed proper or timely objections for clear error. 28 U.S.C. § 636(b)(1)(A); *see Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008) ("To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." (internal quotation marks omitted)); *Diaz v. Comm'r of Soc. Sec. Admin.*, No. 22 Civ. 2256 (KMK) (VR), 2023 WL 6390172, at *1 (S.D.N.Y. Sept. 29, 2023) (similar).

Finally, "a Magistrate Judge's Report and Recommendation recommending that a claim be dismissed constitutes the requisite notice and opportunity to be heard to allow a district court to dismiss a claim *sua sponte*." *Bocci v. Nationstar Mortg. Co.*, No. 23 Civ. 1780 (JPC) (KHP), 2025 WL 2754479, at *5 (S.D.N.Y. Sept. 29, 2025) (citation modified); *accord E.A. Sween Co. v. A&M Deli Express, Inc.*, 787 F. App'x 780, 782 (2d Cir. 2019) (summary order)); *Newman v. Park*, No. 24 Civ. 6829 (JPC) (JW), 2025 WL 2350259, at *1 (S.D.N.Y. Aug. 14, 2025); *Avila v. Acacia Network, Inc.*, No. 23 Civ. 7834 (PAE) (KHP), 2025 WL 2233987, at *3 n.2 (S.D.N.Y. Aug. 6, 2025).

**B.     Rule 12(b)(6) Motion to Dismiss**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

### C. Motions to Reconsider

Local Civil Rule 6.3 instructs that, in seeking reconsideration of a court order, the movant must "set[] forth concisely the matters or controlling decisions which the moving party believes the court has overlooked." S.D.N.Y. Loc. Civ. R. 6.3. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see Cohen v. Jamison*, No. 23 Civ. 1304 (LTS), 2023 WL 3412762, at *2 (S.D.N.Y. May 12, 2023) (explaining that reconsideration is warranted if a movant demonstrates "that the Court overlooked controlling law or factual matters that had been previously put before it" (internal quotation marks omitted)). "The reason for the rule confining reconsideration to matters that were overlooked is to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Schoolcraft v. City of New York*, 298 F.R.D. 134, 137 (S.D.N.Y. 2014) (internal quotation marks omitted); *see Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.").

### III. Discussion

The Court first determines that the proper standard of review is clear error, before explaining why Plaintiffs' objections fail even on *de novo* review.

### A. Judge Wang's Report and Recommendation and Reconsideration Order Were Not Clearly Erroneous.

The parties dispute the appropriate standard of review this Court should apply in considering the Report and Recommendation and the Reconsideration Order. Plaintiffs argue that *de novo* review applies because they have objected to a dispositive order recommending dismissal of the Complaint without leave to amend. Objections at 7-8. Aetna, for its part, argues that any objections to Judge Wang's January 13 Report and Recommendation were untimely and that any objections to her January 14 Reconsideration Order were improper, such that this Court should at most review for clear error. Response at 14-16.

The Court disagrees with Aetna's position that Plaintiffs' objections are untimely. Absent an extension, Plaintiffs' objections to the January 13 Report and Recommendation would have been due January 27, 2025, and their objections to the January 14 Reconsideration Order would have been due January 28, 2025. The Court granted Plaintiffs' extension request until January 31, 2025, Dkt. 48, on which date Plaintiffs filed their combined objections to both the Report and Recommendation and the Reconsideration Order. Dkt. 49. As Judge Rochon explained in another *Rowe* case with an identical procedural posture, "[b]ecause Plaintiffs' extension request could arguably be read as pertaining to both the [Report and Recommendation] and Reconsideration Order, and the Court's granting of the extension was broadly worded, the Court will treat Plaintiffs' objections to both orders as timely." *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* ("*Rowe V*"), No. 22 Civ. 7900 (JLR) (OTW), 2025 WL 1603919, at *3 n.1 (S.D.N.Y. June 6,

2025). So too here. *See* Dkt. 48 at 2 ("Plaintiffs' objections to Judge Wang's Report and Recommendation shall be due on or before January 31, 2025.").

Even treated as timely, however, Plaintiffs' objections are improper. The Court agrees with Aetna that in their objections, "Plaintiffs merely restate the same arguments they submitted in their October 11 letter and, belatedly, in response to Magistrate Judge Wang's December 9 order to show cause—that they should be permitted to amend their Complaint based on their alleged 'course of communications.'" Response at 17. Indeed, the entire thrust of Plaintiffs' objections is that Judge Wang "reli[ed] on a single telephone call while failing to assess the entirety of the communications between the parties." Objections at 8; *see also, e.g.*, *id.* at 15 (arguing that Judge Wang "ignore[d] the well-pleaded facts demonstrating that Aetna's words and deeds established a clear and unambiguous promise to the [Plaintiffs] of reimbursement at an established rate"), 23 ("Aetna wants to avoid the reality of the new facts alleged in the [proposed Amended Complaint] which detail the course of communication between the parties and details Aetna's obvious scheme to defraud medical providers and whoever it is that pays Aetna to administer these claims by depressing reimbursements and fraudulently farming profits."). That general objection simply regurgitates the arguments before Judge Wang and is thus improperly raised. *Compare* Status Letter at 2 (referring to "multiple conversations that occurred between [Plaintiffs] and Aetna prior to the surgery at issue being performed"), *and* OTSC Br. at 5 (explaining that Plaintiffs "rely on extensive, documented communications over several months that established mutual agreement on terms"), *with* Reconsideration Order at 4-5 (noting that "Plaintiffs already made this argument in their October 11, 2024, status letter," explaining that "the communications that Plaintiffs seek to add by amendment do not relate to the supposed rate of payment for the services performed and thus do not support the existence of a 'course of communication' regarding the same," and concluding that "Plaintiffs have failed to present any new facts or controlling law that the Court

11

did not previously consider"). As such, the Court reviews for clear error. *See Riaz*, 2022 WL 4482297, at *2.

This Court agrees with Judge Rochon and the Honorable Analisa Torres, who found on identical postures that Judge Wang's orders were not clearly erroneous. *See Rowe V*, 2025 WL 1603919, at *4-5; *Rowe v. Aetna Health & Life Ins. Co.* ("*Rowe IV*"), No. 22 Civ. 9427 (AT) (OTW), 2025 WL 618556, at *2 (S.D.N.Y. Feb. 25, 2025). As Judge Torres explained, "the Court is not left with the definite and firm conviction that Judge Wang committed a mistake in recommending that Plaintiffs' complaint be dismissed with prejudice" given "the straightforward application of the *Rowe Plastic Surgery* appeal to the nearly identical facts of this case" and "Judge Wang's persuasive conclusion that Plaintiffs' proposed amendments would be futile." *Rowe IV*, 2025 WL 618556, at *2 (citation modified). Or, as Judge Rochon put it, "the Court finds no clear error in the R&R's recommendation that Plaintiffs' claims should be dismissed with prejudice based on the analogous facts and underlying reasoning of *Rowe III*. Nor does the Court find clear error in Judge Wang's decision not to grant Plaintiffs leave to amend their Complaint *sua sponte*." *Rowe V*, 2025 WL 1603919, at *5. Indeed, it would be passing strange for Judge Wang's orders to be clearly erroneous where "many of the other cases filed by the plaintiffs were dismissed for substantially the same reasons set forth in *Rowe I* and later affirmed in *Rowe III*." *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* ("*Rowe VI*"), No. 23 Civ. 8140 (JGK), 2025 WL 1786416, at *2 (S.D.N.Y. June 27, 2025) (collecting cases). Here, too, this Court finds no clear error.

B.      **Reviewed *De Novo*, Plaintiffs' Objections Lack Merit.**

In any event, even were Plaintiffs' objections reviewed *de novo*, this Court would still conclude that dismissing with prejudice and without leave to amend is the proper outcome. *See Rowe V*, 2025 WL 1603919, at *5 ("Given the convoluted procedural posture of this case, in an

abundance of caution, the Court will review *de novo* Judge Wang's decision not to reconsider her recommendation to dismiss the Complaint with prejudice."). The Complaint fails to state any claims upon which relief may be granted. Similarly, "the amended claims set forth in the [proposed Amended Complaint] would be futile," and "it is well established that leave to amend a complaint need not be granted when amendment would be futile." *Id.* at *6, *8 (citation modified); *accord Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* ("*Rowe VII*"), No. 23 Civ. 6206 (SHS) (OTW), 2025 WL 2218097, at *2 (S.D.N.Y. Aug. 5, 2025) ("[T]he Court finds that plaintiffs' motion for leave to amend their complaint was properly denied because, based on plaintiffs' proposed amended complaint, amendment would be futile."). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). The proposed Amended Complaint fails to cure the Complaint's deficiencies and does not state any claims, such that amendment is futile.

### 1. The Complaint and the Proposed Amended Complaint Fail to State a Breach-of-Contract Claim.

"Under New York law, the first element of a breach of contract claim is the existence of a contract." *Rowe III*, 2024 WL 4315128, at *2. "A valid contract requires an offer," which "must be sufficiently definite such that its unequivocal acceptance will give rise to an enforceable contract." *Id.* (citation modified). As the Second Circuit explained in *Rowe III*, the plaintiffs' allegations there—premised on Aetna's representation on a phone call that the reimbursement rate was "80 percent reasonable and customary"—fell "short of the definiteness typically required to create an offer, such as details of the specific service and the price or an explicit undertaking of a duty." *Id.* at *3. And "[a]bsent an offer, there can be no contract between the [plaintiffs] and Aetna," thus calling for the dismissal of their breach-of-contract claim. *Id.*

13

The same is true here. Plaintiffs' original Complaint is similarly premised on a single phone call on June 23, 2022, in which "Aetna's employee represented that the total allowed amount for this service was based upon 80% usual and customary for covered services rendered to HC." Compl. ¶ 27. And while this Court "does not have a transcript of [that] call as the courts did in *Rowe I* and *Rowe III*, Plaintiffs' Complaint in the instant case likewise lacks concrete factual detail indicative of an offer," as "Plaintiffs do not allege that the parties discussed [*inter alia*] specific prices for those services, nor do Plaintiffs plead any facts to support an inference that Aetna explicitly undertook a duty to pay for the surgery at a specific rate or otherwise." *Rowe V*, 2025 WL 1603919, at *4.

The proposed Amended Complaint moves the needle no further. While Plaintiffs insist that their refurbished breach-of-contract claim goes beyond "a single phone call" and instead relies "on a series of communications, approvals, and promises," Objections at 4-5, those other communications allegedly concerned the surgery's coverage, location, and participants, PAC ¶¶ 76-83. "Still absent from the [proposed Amended Complaint] are any allegations that Aetna 'made an offer or promise to pay a particular amount,'" which is "necessary to state a claim for breach of contract." *Rowe V*, 2025 WL 1603919, at *5 (quoting *Rowe II*, 2024 WL 382143, at *2); *accord Rowe VII*, 2025 WL 2218097, at *3 ("Neither the [original phone] call nor either of the subsequent alleged communications was an 'offer' by Aetna that could be accepted by plaintiffs to form a contract, and the proposed amended complaint therefore fails to state a claim for breach of contract."); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Health & Life Ins. Co.* ("*Rowe VIII*"), No. 22 Civ. 4755 (MKB), 2025 WL 2452406, at *13-17 (E.D.N.Y. Aug. 26, 2025) ("These allegations fail to establish that Aetna made a definite offer to Plaintiffs or an agreement as to the reimbursement amount."). Indeed, Plaintiffs implicitly concede that there was only one conversation even remotely concerning price, *i.e.*, the June 23, 2022 phone call, arguing that "there

14

is nothing in Contract Law that requires more than one conversation regarding price for a unilateral contract if the offeree is willing to accept the price term offered." Objections at 10; *see also id.* at 17 ("The [Report and Recommendation], however, offered no factual justification or legal reason for why more than one conversation regarding price was necessary; neither does Aetna."). But a legally insufficient allegation—that sole phone call—plus even less sufficient allegations does not a contract make. Because the Complaint does not state a claim for breach of contract and the proposed Amended Complaint's breach-of-contract claim would be futile, Plaintiffs' breach-of-contract claim is properly dismissed with prejudice.

### 2. The Complaint and the Proposed Amended Complaint Similarly Fail to State a Promissory-Estoppel Claim.

For similar reasons, Plaintiffs' promissory-estoppel claim in the Complaint fails and as alleged in the proposed Amended Complaint is futile. In *Rowe III*, the Second Circuit explained that the plaintiffs' allegations—likewise based on a call with Aetna's employee about the 80% reasonable and customary reimbursement rate—did "not plead a clear and unambiguous promise," the "first element of a promissory estoppel claim." 2024 WL 4315128, at *4. That is precisely the case here. *See* Compl. ¶ 83; PAC ¶ 77; Objections at 17. Plaintiffs' additional allegations about "subsequent communications" do not change the conclusion that the June 23, 2022 phone call did not constitute a sufficiently clear promise to state a claim for promissory estoppel. *Rowe V*, 2025 WL 1603919, at *5; *accord Rowe VII*, 2025 WL 2218097, at *4; *Rowe VIII*, 2025 WL 2452406, at *17-18. So that claim, too, is properly dismissed with prejudice.

### 3. The Complaint and the Proposed Amended Complaint Do Not State an Unjust-Enrichment Claim.

"To plead an unjust enrichment claim, the plaintiff must show: (1) the defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Rowe III*, 2024 WL 4315128, at *3

15

(citation modified). The claim requires showing both that the defendant received a "specific and direct" benefit from the plaintiff and that "the services were performed *for the defendant*, and not at the behest of someone other than the defendant." *Id.* at *3-4 (internal quotation marks omitted). As the Second Circuit held in *Rowe III*, the plaintiffs' "unjust enrichment claim fails for two reasons—Aetna neither benefitted from the Providers' services nor asked the Providers to perform the surgery," as it was the patient who both "received the benefit of the Providers' direct services" and requested the surgery. *Id.*

The Complaint and the proposed Amended Complaint run headlong into the Second Circuit's holdings. The Complaint alleges that Aetna induced Plaintiffs to render the procedure "by offering to pay for bilateral reduction mammaplasty at the 80% of usual and customary rate," that Plaintiffs "conferred a benefit upon Aetna," including "the esteem and the expectancy of HC's continued customer patronage" which "has a value to Aetna," and that "Aetna received the benefit of its bargain, *i.e.*, [Plaintiffs] rendering bilateral reduction mammaplasty to HC." Compl. ¶¶ 73-80. And in the proposed Amended Complaint, Plaintiffs allege that Aetna "directly profited" from the "difference between the Plaintiffs' billed charges and the artificially depressed amounts reimbursed by Aetna," and that "[t]he less Aetna paid Plaintiffs, the more it profited." PAC ¶¶ 54-57. But the Second Circuit rejected the allegations "that Aetna was enriched by [the plaintiffs'] failure to pay amounts due and every dollar that Aetna didn't pay that it was obligated to pay was a dollar in Aetna's pocket as pure profit," explaining that those were "allegations of an abstract and attenuated indirect benefit Aetna received" and thus "insufficient" to state a claim. *Rowe III*, 2024 WL 4315128, at *3 (internal quotation marks omitted). And Plaintiffs further allege in the proposed Amended Complaint that "[f]rom as early as June 23, 2020, Aetna was fully aware that Plaintiffs were preparing to render bilateral breast reduction to H.C.," PAC ¶ 59, meaning that "the surgeries were performed at the behest of the patient" and that it "is not plausible for plaintiffs to

16

suggest that the operations were somehow performed at the behest of Aetna," *Rowe VII*, 2025 WL 2218097, at *3. *See Rowe VIII*, 2025 WL 2452406, at *20 (collecting cases that "have dismissed Rowe Plastic Surgery and/or Rowe MD unjust enrichment claims against Aetna because they performed the underlying medical services at a patient's behest"). As both the Complaint and the proposed Amended Complaint fail to state a claim for unjust enrichment, that claim is properly dismissed with prejudice.

### 4. Nor Does the Proposed Amended Complaint State a Fraudulent Inducement Claim.

A fraudulent inducement claim, which "must be pleaded according to the heightened pleading standard of Federal Rule of Civil Procedure 9(b)," requires "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [the plaintiffs]; and (iv) resulting damages." *Rowe III*, 2024 WL 4315128, at *4 (citation omitted). The material misrepresentation "must be 'collateral to the contract it induced,'" as "a fraud claim will not be sustained on a motion to dismiss where the plaintiff is simply using the claim 'as a means of restating what is, in substance, a claim for breach of contract.'" *Id.* at *5 (quoting *Wall*, 471 F.3d at 416). Under that principle, the Second Circuit rejected the plaintiffs' fraudulent inducement claim in *Rowe III*, explaining that allegations that "Aetna intentionally told the Providers that its reimbursement was based upon 80% Reasonable Customary when it knew its claims processing system did not allow for payment using 80% Reasonable and Customary" "simply restated their breach of contract claim." *Id.* (internal quotation marks omitted).

Once more, the proposed Amended Complaint falls squarely within the Second Circuit's holding. The fraudulent-inducement claim's thrust remains that "[i]t was a lie to say that Aetna's price was the '80th percentile of Reasonable and Customary' fee schedule." PAC ¶¶ 88-97. As

17

Judge Rochon concluded, "[a]lthough Plaintiffs may have slightly repackaged their allegations, they are essentially the same as those the Second Circuit found inadequate to support a fraudulent-inducement claim in *Rowe III*." *Rowe V*, 2025 WL 1603919, at *7. The proposed Amended Complaint thus "fails to state a claim for fraudulent inducement," and accordingly is dismissed with prejudice. *Id.*; *accord Rowe VIII*, 2025 WL 2452406, at *22-25; *Rowe VII*, 2025 WL 2218097, at *4.

### 5. Plaintiffs Have Abandoned Their Prompt Pay Law and Conversion Claims, and Fail to State Those Claims Anyway.

In their objections, Plaintiffs address neither their claim under the Prompt Pay Law in the original Complaint, Compl. ¶¶ 87-91, nor their conversion claim in the proposed Amended Complaint, PAC ¶¶ 101-107. The Court thus "deems" those "claim[s] abandoned." *Rowe VIII*, 2025 WL 2452406, at *25. And even were the Court to address those claims on the merits, they would still fail. *See Rowe V*, 2025 WL 1603919, at *4 (explaining that because "Plaintiffs do not state a claim for breach of contract," then "[b]y extension" they "also fail to state a claim under the Prompt Pay Law, which only applies to health care claims submitted under contracts or agreements" (citation modified)); *id.* at *7 (explaining that "Plaintiffs' conversion claim is premised on their alleged right to receive payment from Aetna for the services they rendered, which is indistinguishable from the facts underlying their breach-of-contract claim," and "[b]ecause Plaintiffs have alleged no more than a mere violation of contractual rights, the [proposed Amended Complaint] also fails to state a claim for conversion" (citation modified)).

\* \* \*

At bottom, neither the original Complaint nor the proposed Amended Complaint states any claims upon which relief may be granted, such that dismissal with prejudice and without leave to amend is proper.[4]

### IV. Conclusion

For the above reasons, the Court adopts the Report and Recommendation and the Reconsideration Order. Plaintiffs' Complaint is dismissed with prejudice for failure to state a claim and without leave to amend. The Clerk of Court is respectfully directed to enter judgment in Aetna's favor and to close this case.

SO ORDERED.

Dated: November 24, 2025
New York, New York

JOHN P. CRONAN
United States District Judge

---

[4] "Plaintiffs' motion to amend, which Judge Wang denied after she issued the R&R and Reconsideration Order, does not alter the Court's conclusion that this case should be dismissed with prejudice." *Rowe V*, 2025 WL 1603919, at \*6. The undersigned has reviewed Judge Wang's denial of Plaintiffs' motion to amend *de novo*. That denial, to which no party has objected, was correctly decided and "dismissal of the Complaint with prejudice is appropriate because the amended claims set forth in the [proposed Amended Complaint] would be futile." *Id.* at \*8; *accord Rowe VII*, 2025 WL 2218097, at \*2-4.